Filed 6/13/22 Marriage of Blum and Herbstman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ADAM BLUM and LAUREN HERBSTMAN. | H045460, H046286, H047513 |
| | (Santa Clara County Super. Ct. No. FL129664) |
| ADAM BLUM, Respondent, v. LAUREN HERBSTMAN, Appellant. | |

In a series of appeals ordered considered together for oral argument and decision, Lauren Herbstman (mother) challenges an order modifying child support and related orders. Specifically, she appeals from a posttrial order reducing Adam Blum's (father's) child support obligation for the parties' minor child. Mother also challenges various pretrial orders, including one reserving jurisdiction on her request for pendente lite attorney's fees, and a posttrial order enforcing the order modifying child support. We reverse the order modifying child support and the later enforcement order and remand to the trial court with directions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and father married in 2004. Their only child was born later that year. They separated on December 31, 2004, and father filed for divorce the following year.

Since that time, the parties have been engaged in high conflict litigation concerning child custody and support.

In 2011, following a child support trial, father was ordered to pay mother $1,441 in monthly child support. On January 20, 2015, mother filed a request for order seeking to modify child support.[1] She asserted that father's annual income exceeded $4 million and requested $10,000 per month in child support. In a supporting declaration, mother declared that during the 2011 child support trial father sold a company he had founded to Motorola in exchange for $4.6 million in cash plus options and restricted stock valued at $3.7 million and that father had failed to disclose that fact at trial. Mother lodged supporting documents with the court. Those included documents subpoenaed from Motorola setting forth father's proceeds from the sale of his business, father's 2013 W-2 with total wages of nearly $2.5 million,[2] and bank account statements showing father had a closing balance of approximately $1.4 million on both December 31, 2012, and January 1, 2014. Also attached to mother's request for order was father's February 14, 2014 Income and Expense Declaration. In it, father declared that he had earned, on average, $16,472 per month in the preceding 12 months. He further declared that he had $105,300 in cash and checking accounts, savings, credit union, money market, and other deposit accounts and $0 in stocks, bonds, and other liquid assets.

Mother's January 2015 request for order also sought Family Code section 2030[3] attorney's fees and costs in the amount of $750,000. The court denied that request for

---

[1] She also sought to set aside the earlier child support order. The trial court bifurcated the request to set aside from the request to modify and denied the motion to set aside as time barred. The request to set aside the 2011 child support order is not before us on appeal.

[2] Mother acknowledged that father had filed a declaration in January 2015 stating that the 2013 W-2 was erroneous and that Motorola had incorrectly categorized what should have been capital gains as W-2 income.

[3] All further statutory references are to the Family Code unless otherwise indicated.

attorney's fees on April 23, 2015. Mother made numerous subsequent requests for section 2030 attorney's fees in advance of the child support modification trial, including a request on July 26, 2017. At a hearing on September 9, 2017, the court reserved jurisdiction on attorney's fees until after trial. That ruling was memorialized in an order dated November 3, 2017. Mother appeals from that order in case No. H045460 and reasserts her challenge to it in case No. H046286.

Father moved in limine to exclude as irrelevant evidence as to his income or finances prior to the January 2015 filing of the request to modify child support. Mother opposed the motion, arguing that evidence of father's income dating back to 2011 was relevant to show that his income fluctuates and to allow the trial court to determine whether child support should be adjusted under section 4064 to accommodate his fluctuating income. The court granted father's in limine motion.

The case went to trial on the issue of child support modification in September 2017. Mother represented herself for most of the trial, although she had representation for closing arguments. The following evidence was adduced at trial.

Mother rents a home in Danville. At the time of the 2017 trial, she was the CEO and sole employee of a business called Personalized Gift Stop, which she ran out of her home. She owned the business until 2014, when she transferred ownership to her mother, to whom she owed personal and business-related debts. Mother earned $54,667 in 2015, $54,500 in 2016, and was earning $5,000 per month in 2017. She also had use of a company car and received $518 per month from Personalized Gift Stop as reimbursement for the home office space the company used in her home.

Father was the CEO of Open Ed, a startup, from January 2015 until May 2016, when Open Ed was acquired by ACT. Father became an employee of ACT at that time. Father's annual salary was $90,000 between January 2015 and May 27, 2016. On May 27, 2016, his annual salary increased to $200,000. Father received a retention bonus

3

of $125,000 in April 2017 and was contractually entitled to receive a retention bonus of $125,000 in May 2018.

When Open Ed was acquired, father received $2,684,538. He represented that those funds were community property, and that he and his current wife invested $2,426,708 of the funds into two new companies and used the remaining funds ($257,830) to pay attorney's fees.

Father testified that he owns two homes outright, his family home in Santa Cruz and a rental property in Los Gatos. He received rental income of $2,093 per month in 2015 and $848 per month in 2016. The rental property was damaged by a landslide in 2016; it was undergoing repairs at the time of trial and was not generating rental income.

Father's expert in calculating guideline child support testified that the guideline child support should be $517 per month for 2015, $829 per month for 2016, and $1,058 per month for 2017 (plus $7,050 for the bonus father earned that year). Father argued that the court should impute $2,518 per month in additional income to mother based on the monthly rent subsidy she received from her employer, her use of the company car, and debt forgiveness from her mother. However, father's expert considered only mother's salary (and not any possible imputed income) in making the guideline child support calculations. The expert testified that he did not include the full proceeds from the Open Ed sale in father's 2016 income. Instead, he included an imputed rate of return on the after-tax proceeds, which resulted in additional monthly income of $2,814.[4] The expert calculated the portion of the 2017 bonus to be paid in child support using a bonus table; based on the gross amount of the bonus, the table called for a percentage of 5.64 percent. The bonus table does not appear in the record.

---

[4] Based on the expert's testimony, it appears he performed the calculation on the full amount of the proceeds, despite acknowledging that approximately $258,000 of the proceeds were not reinvested. The expert's report is not in the appellate record.

In closing argument, mother's attorney argued that the court should impute $658,323 in annual income to father for 2015 and 2017, which the attorney argued was the "average of the last several years of Mr. Blum's income." Mother's counsel further argued that the full amount of the proceeds from the sale of Open Ed should be treated as income for 2016.

At the court's request, mother submitted DissoMaster calculations following trial. According to those calculations, the guideline child support was $35,856 per month for January and February 2015, $27,743 per month for March through December 2015, $38,264 per month for 2016, and $31,641 per month for 2017. The DissoMaster reports attributed $610,706 in *monthly* income[5] to father for the entire period and represented that amount is "based on average earned income from 2011-2017." No other explanation or computations supporting that income figure appear in the record.

On March 5, 2018, the trial court orally stated its tentative statement of decision as to child support modification. The court found that father has a fluctuating income, that reducing monthly child support to "as low as $500 and $600 monthly" as calculated by father's expert would not be "in the best interest of the child," and that it was appropriate in this case to "deviate from guideline support." The court stated that father's "income will be treated with a base salary of $200,000 each year, with a *Smith-Ostler* adjustment as stated for any income over the amount as set forth in the order be calculated on an annual basis."[6] The court ordered mother to prepare a statement of decision and DissoMaster calculations. The parties stipulated to an April 25, 2018 deadline for mother

---

[5] This figure is at odds with mother's argument at trial that father's *annual* income was approximately $650,000.

[6] A family law court may award as spousal or child support " 'a percentage of uncertain earnings,' " such as future bonuses, in order to avoid " 'an indefinite number of future hearings at which the details of income, expenses, investment success or failure, tax consequences and fairness must be reevaluated.' These awards are referred to as 'Ostler-Smith' payments after *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 42." (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 352, fn. 3.)

5

to file and submit the statement of decision and calculations and a May 10, 2018 deadline for father to file objections.

No statement of decision or DissoMaster calculations prepared by mother appear in the appellate record. Father says she never filed those documents; mother claims she "provided a proposed Statement of Decision" without mentioning any DissoMaster calculations. No such filing appears on the register of actions. Mother did, however, file objections to the proposed statement of decision on May 10, 2018, which are in the record. Therein, she represented that a Statement of Decision was "circulated 4.25.18." The register of actions indicates that father filed objections to "R[espondent's] proposed stmt of decision re: mod of C/S" on May 10, 2018. That filing is not in the record on appeal.

The court issued its final statement of decision on August 14, 2018. In it, the court credited mother's tax returns as establishing her correct income, declining father's request to impute income to her. As to father's income, the court concluded that the proceeds from the sale of Open Ed, which were reinvested, were unavailable for child support. The court rejected father's proposal to impute income to himself from the proceeds of the sale using a reasonable rate of return calculation as "not in the best interest of the child." The court expressly found that father has a fluctuating income, stated that it had considered the parties' lifestyles, and found "that this is such a case which necessitates a deviation from guideline child support" under section 4050 et seq. The court then found "that the factual basis for best determining this fluctuating income is the salary paid to [father] by third party ACT during the relevant time period and pendency of this motion" and determined father's base salary to be $200,000 annually. The court ordered father to pay mother $905 in monthly child support (retroactive to the January 2015 filing of the request to modify) and ordered an annual *Ostler-Smith* payment "for any additional income over" the $200,000 base salary (including "any funds in escrow, any equity payments due from ACT to Petitioner, any investment

6

income, any interest income, any rental property income, any dividend income, any capital gains income, and any income from Petitioner's separate property or his share of community property") to be paid each year by December 31. The court further ordered that "[a]ny overpayment of child support from 2015 to present shall be offset by any amount due and owing under Smith-Ostler" and that "[a]ny remaining Smith-Ostler payments due from Petitioner to Respondent are to be paid to minor's counsel's trust account to pay all outstanding balances due to professionals ordered by the court with outstanding unpaid invoices." No DissoMaster report was attached to the order.

Mother filed objections to the final statement of decision as well as a timely notice of appeal from the order, which gave rise to case No. H046286.

On August 29, 2019, the trial court found that father had overpaid mother $24,753 in base child support between January 2015 and September 2018 and that father owed mother $24,162.44 in *Ostler-Smith* payments for the years 2015-2018. At father's request, the court ordered "that the 2017 and 2018 Smith Ostler arrears . . . be deposited directly into the trust held by minor's counsel . . . to [pay] for [mother's] 1/2 of the professionals used for the minor child," that "the 2016 Smith Ostler arrears . . . be offset against [father's] overpayment of child support," and that father's monthly support obligation going forward be reduced to $343.29 to account for the remainder of the overpayment. Mother appealed from those orders, giving rise to case No. H047513.

We ordered case Nos. H045460, H046286, and H047513 considered together for argument and decision.

## II.    DISCUSSION

### A.    Pretrial Rulings

#### 1.    Discovery Rulings

##### a.    Background

On February 5, 2015, mother issued subpoenas to four financial institutions seeking father's financial records dating back to 2009. Father moved to quash those

7

subpoenas, arguing that any financial records predating the January 2015 filing of the request to modify child support were irrelevant and undiscoverable. Mother responded that the discovery was necessary to show that father "is not being truthful with the Court when representing his current financial status" in connection with child support and mother's attorney's fees motions. She further argued that the discovery was necessary to "determine [father's] actual income" and cited *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 for the proposition that stock options are compensation and must be used to calculate child support.

On February 19, 2015, mother propounded a request for production of documents on father with 46 requests seeking financial information dating back to January 1, 2009. Father objected to the requests. In May 2015, mother moved to compel production of the documents.

The trial court held a hearing on the motions to quash and the motion to compel on January 5, 2016. At that time, father's counsel represented that he had produced his tax returns for the years 2008 through 2014. Counsel for mother agreed but complained that the tax returns were missing schedules. The court ordered the parties to exchange signed IRS forms (form 4506-T) releasing their tax returns for the tax years 2011 to present to the other party.

Mother's counsel argued that the requested discovery was needed to determine father's assets, noting "the court, in setting guideline support, can ask for reasonable rate of return . . . [such as] three percent of whatever's in [father's] investment account[s]." The court granted the motions to quash, reasoning that mother had not shown a "need" for the bank documents and was merely "speculating" that father was hiding assets. The court suggested that someone who is "not a CPA" cannot look at "tax returns and have a reasonable belief that further documents would lead to admissible evidence."

8

With respect to the motion to compel, the parties were ordered to meet and confer during a break in the proceedings. They came to agreements as to certain documents, and the motion was otherwise denied.

Mother moved for reconsideration of the orders granting the motions to quash and denying her motion to compel. That motion was denied, as was a subsequent writ filed in this court.

### b.    Analysis

Mother complains that the trial court erred in denying her certain discovery, but it is not clear which ruling or rulings she is challenging on appeal. The heading for the section discussing discovery in her opening brief refers broadly to "rulings on various discovery motions . . . throughout the proceedings." A subsequent subheading appears to limit the challenge to the "denial of [her] motion to compel." But the text of that subsection discusses the motions to quash as well. Father reads the opening brief as challenging only the denial of the motion to compel. Mother does not dispute that interpretation in her reply brief, which mentions only the motion to compel. Accordingly, we shall consider only the denial of the motion to compel. "We review the trial court's grant or denial of a motion to compel discovery for an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

Mother contends the trial court applied the wrong legal standard in denying her motion to compel, requiring her to "prove that requested documents are both admissible and persuasive." We disagree with that characterization. The court did state that mother had not shown a "need" for the requested documents. But the court also articulated what mother agrees is the correct standard—whether the documents appeared "reasonably calculated to lead to the discovery of admissible evidence."[7] (Code Civ. Proc.,

---

[7] The court below paraphrased this standard, stating the inquiry as whether mother had shown "a reasonable belief that further documents would lead to admissible evidence."

9

§ 2017.010.) We presume that the trial court applied the correct law unless error is affirmatively shown. (*People v. Martinez* (2017) 10 Cal.App.5th 686, 728.) Here it is not.

Mother asserts in two headings, although not in the body of her brief, that the trial court abused its discretion in denying her motion to compel. Her argument appears to be that she showed that father failed to accurately disclose his income and assets such that she was entitled to all of his financial records for the preceding seven years in order to trace and prove his true income and assets for purposes of establishing child support. She cites no child support cases in support of her position, instead relying on marriage dissolution cases involving disputes over property characterization. But even putting aside that shortcoming and assuming mother was entitled to some amount of discovery into father's assets, she has failed to establish reversible error for the following three reasons.

First, the motion to compel involved 46 requests for production of documents, some of which the parties resolved by agreement below. However, mother does not inform us which requests remained unresolved. Without knowing the scope of the claim of error we cannot effectively review it.

Second, mother requested production of a wide range of documents, including father's pre-nuptial agreement with his current wife; his credit report; his credit card statements dating back to January 2009; documentation of all expenses claimed by father "in any Financial Declaration" he filed; the articles of incorporation, bylaws, corporate resolutions, and financial statements "of any and all business entities in which [father had] any ownership interest"; among many other documents. Mother's arguments on appeal are far too vague for us to intelligently review each of these disparate requests. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."].)

10

Finally, the trial court excluded all evidence of father's income and finances predating January 2015. Below we conclude that mother has failed to show that this evidentiary ruling constituted reversible error. Accordingly, mother cannot establish that the denial of discovery into father's pre-2015 finances was prejudicial.

### 2. Exclusion of Evidence of Father's Income and Finances Before Filing of the Request to Modify Child Support

Mother argues the trial court erred by excluding evidence of father's income and finances predating the January 2015 filing of the request to modify child support.

### a. Standard of Review

"We review a trial court's evidentiary rulings for abuse of discretion." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).) This court has explained that "[d]iscretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.] There must be a showing of a clear case of abuse *and miscarriage of justice* in order to warrant a reversal. [Citation]." (*Ibid.*, italics added.) The erroneous exclusion of evidence causes prejudice to an appellant amounting to a " 'miscarriage of justice' " only if "a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480; see also Cal. Const., art. VI, § 13; Evid. Code, § 354.) " 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred. [Citations.]' [Citation.]" (*Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 58.) It likewise is the appellant's burden to establish abuse of discretion. (*Shaw*, *supra*, at p. 281.)

### b. Evidence of Father's Pre-2015 Income

With respect to income evidence, mother's argument relies on section 4064, which provides that "[t]he court may adjust the child support order as appropriate to accommodate seasonal or fluctuating income of either parent." Mother argues that

father's income fluctuates and, in order to properly adjust the child support order to accommodate that fluctuation, the court should have considered his income going back to 2011.

The trial court agreed that father's income fluctuates but declined to look back to the years before the request for modification was filed, instead looking at his income in 2015, 2016, and 2017. Mother fails to establish that, in doing so, the trial court abused its discretion. She cites no case supporting her view that it was unreasonable for the court to decline to consider seven years of income to properly accommodate income fluctuation. Indeed, she cites no case law discussing the proper application of section 4064.

Our own research reveals that a court's aim, in applying section 4064, is "to predict *likely* income for the immediate *future*, as distinct from extraordinarily high or low income in the *past.*" (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1082 (*Riddle*).) "[T]he time period on which income is calculated must be long enough to be *representative*, as distinct from *extraordinary.*" (*Ibid.*) As the court in *Riddle* explained, a time period that is too long or too short will not accurately predict future income. (*Id.* at pp. 1084-1085.) And the proper time period may vary based on the nature of the employment. (*Id.* at p. 1084 [opining that "a two-or three-year average might indeed yield a more representative overall income figure for" an author whereas a shorter period of 12 months might be appropriate for a commissioned salesperson].)

Mother makes no effort to explain why her preferred time period—2011 to the time of the 2017 trial—would yield a more representative income figure for father than would the shorter time period used by the court. According to mother (although at least partially disputed by father), father's wage income was $308,359 in 2011; $609,503 in 2012; $2,461,592 in 2013; $220,072 in 2014; $90,000 in 2015; and $260,416 in 2016. Based on mother's figures, 2013 was clearly an outlier and including it in the time period is not likely to yield an accurate prediction of "*likely* income for the immediate *future, as distinct from extraordinarily high or low income in the *past.*" (*Riddle*, *supra*, 125

Cal.App.4th at p. 1082.) For the foregoing reasons, we conclude mother has failed to establish that the trial court abused its discretion in excluding evidence of father's income prior to 2015.

### c. Other Pre-2015 Financial Evidence

As to evidence of father's assets in the years preceding 2015, mother asserts that "the case law is clear that such assets should be considered for the purposes of child support." But she does not cite a single such case or otherwise support her argument with any citation to authority. We therefore need not consider this claim. (See *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 785; *Nein v. HostPro, Inc.* (2009) 174 Cal.App.4th 833, 855 [where a party "fails to make a legal argument or to cite any legal authority" in support of a contention, the claim is forfeited on appeal].)

### 3. Failure to Designate Case as Complex

On July 26, 2017, mother sought various ex parte orders, including one designating the case as complex under section 2032, subdivision (d).[8] Her requests were denied pending a hearing. Following a hearing on September 7, 2017, the court denied mother's request to deem the case complex. There was no substantive discussion of the request or of section 2032, subdivision (d) at the hearing. On appeal, mother contends the trial court abused its discretion in denying her request to deem the case complex.

---

[8] Section 2032, subdivision (d) provides: "Either party may, at any time before the hearing of the cause on the merits, on noticed motion, request the court to make a finding that the case involves complex or substantial issues of fact or law related to property rights, visitation, custody, or support. Upon that finding, the court may in its discretion determine the appropriate, equitable allocation of attorney's fees, court costs, expert fees, and consultant fees between the parties. The court order may provide for the allocation of separate or community assets, security against these assets, and for payments from income or anticipated income of either party for the purpose described in this subdivision and for the benefit of one or both parties. Payments shall be authorized only on agreement of the parties or, in the absence thereof, by court order. The court may order that a referee be appointed pursuant to Section 639 of the Code of Civil Procedure to oversee the allocation of fees and costs."

Mother fails to show error or prejudice. On the merits, she does not identify the "complex or substantial issues of fact or law related to property rights, visitation, custody, or support" that she contends the case involves. (§ 2032, subd. (d).) Even assuming there was error, reversal is not required because mother does not say how the ruling prejudiced her. In the section heading, she asserts that the ruling "prevented relevant, admissible evidence from being introduced," but she does not identify that evidence or elaborate on that argument in the body of the brief. Because no miscarriage of justice has been established, reversal is not required. (Cal. Const., art. VI, § 13.)

### 4.    *Failure to Appoint a Joint Neutral Accountant*

Mother contends the court erred by failing to appoint a joint neutral accountant under Evidence Code section 730.

### a.    *Basic Rules of Appellate Review and the Standard of Review*

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Therefore, a party challenging a judgment or an appealable order "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' [Citations.]" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Thus, where the appellant fails to provide an adequate record as to any issue the appellant has raised on appeal, the issue must be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Evidence Code section 730 provides, in relevant part, "[w]hen it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on

14

motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." We review a trial court's decision whether to appoint an Evidence Code section 730 expert for abuse of discretion. (*In re Marriage of E.U. & J.E.* (2012) 212 Cal.App.4th 1377, 1389.)

### b. Analysis

The record provided by mother is so inadequate as to preclude our review of this issue.

Mother points us to the February 26, 2016 Findings and Order After Hearing, which states that at a January 5, 2016 hearing "[t]he Court declined to appoint a joint neutral C.P.A., pursuant to E.C. 730, on Respondent's request." Mother does not cite to any motion, either written or oral, that she made pursuant to Evidence Code section 730. Our review of the transcript from the January 5, 2016 hearing leads us to believe that mother did not in fact make such a motion. The following is the only exchange regarding the possible appointment of an expert that took place at that hearing.

Mother's Counsel: "[T]he Court did suggest the appointment of a forensic accountant may be possible in regards to -- and requested the opinion of Department of Child Support Services. And so I was wondering where the Court was at with that particular suggestion."

"THE COURT: Well, my suggestion was for a neutral forensic accountant, and that was in hopes of settlement of the case as opposed to it going to trial. And then it might be a little early to compel you guys to do it since you don't have the tax returns. And I don't mean to be overly cynical, but I'm not very confident it would be more than just a time-wasting exercise. [¶] So, I mean, if you guys think you're going to be able to get close to settle things and that would be what brings it over the finish line, I'd be more than happy to set that."

15

The foregoing suggests it was the court, not mother, that raised the possibility of appointing an Evidence Code section 730 expert. In that case, we would find no error as nothing in Evidence Code section 730 *compels* a court to appoint an expert sua sponte.

Even assuming mother did move the court to appoint an expert, without a record of that motion we cannot assess the basis for the request or, in turn, whether the denial was an abuse of discretion. On appeal, mother cites to declarations she filed with the court in July 2017—more than a year and a half after the challenged ruling was made—in an effort to show an abuse of discretion. Those later-filed declarations plainly were not before the court at the time it declined to appoint a joint neutral accountant and therefore cannot establish error.

### 5.      *Order Reserving Section 2030 Attorney's Fees*

### a.      *Background*

Mother requested pendente lite attorney's fees under section 2030 in conjunction with her request to modify child support. The trial court (Judge Weinstein) denied that initial request in April 2015. The court noted that mother had previously been granted a total of $67,000 in such fees. The court found that "there is unquestionably a disparity in financial resources." But the court further found that mother had failed to show that the requested fees were necessary, noting that she "has continually claimed she [is] unable to maintain her litigation without an award of extraordinary sums of money - including at least two requests for each well over half a million dollars each. Yet, when granted a mere fraction of the requested amount, she has still shown a 'demonstrated ability' to keep up with the frenetic litigation." The court further concluded that mother's "lack of credibility[,] history of acting in bad faith," and her "suspicious delay" in seeking child support modification suggested "a desire to 'incite further conflict.' "[9] Because of those

_____

[9] The court based its findings that mother lacked credibility and had a history of acting in bad faith on the order and statement of decision issued by a different judge, who presided over the custody trial in this matter. That judge found that mother lacked

16

"litigation tactics," the court found that mother should be required to pursue child support modification "with her own funds."

Mother made numerous subsequent requests for attorney's fees under section 2030 in advance of the child support trial. The court (Judge Weinstein) awarded her $7,500 in attorney's fees on October 16, 2015, reasoning that circumstances had changed in that it was now clear that a trial on child support modification would be required.

Mother filed another request, seeking $135,500 in section 2030 attorney's fees in August 2016. At a hearing on October 31, 2016, the court (Judge Weinstein) reserved on the request for further attorney's fees, reasoning that "financial issues" would be clearer to the court at the conclusion of the child support modification trial. The court "disagree[d]" with mother's position that she could not go forward with the litigation unless the motion was granted and referenced the April 2015 order denying fees as "instructive."

On July 26, 2017, mother again sought attorney's fees, this time on an emergency basis and in the amount of $456,168. In support of that request, mother declared that she had $410,491 in debt attributable to legal costs and that without a fee award she would be forced to represent herself at trial. The attorney she planned to hire if fees were awarded declared that the child support modification trial would generate up to $157,000 in attorney's fees, plus substantial expert witness fees. The court (Judge McGowen) declined to award fees on an ex parte basis, as requested. At a hearing on September 7, 2017, Judge McGowen reaffirmed the prior ruling reserving on attorney's fees until after trial. That ruling was memorialized in an order dated November 3, 2017. Mother appeals that order in case No. H045460 and reasserts her challenges to it in case No. H046286.

_____

credibility, had failed to follow court orders, had moved out of the county with the minor child in bad faith, and had made meritless allegations of domestic violence against father.

17

###### b. *Legal Principles*

Section 2030, subdivision (a)(1) provides that "[i]n a proceeding for dissolution of marriage . . . and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." "The purpose of section 2030 is to ensure parity. 'The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength.' [Citation.]" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.)

Subdivision (a)(2) of section 2030 states that "[w]hen a request for attorney's fees and costs is made, the court *shall* make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs." (Italics added.) "The word 'shall' in this subdivision has been italicized to emphasize the mandatory nature of the provision." (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).)

"[F]ailure to make explicit findings on the three questions set forth in" section 2030 is reversible error only where the appellant establishes prejudice "by showing there is 'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.' [Citation.]" (*Morton*, *supra*, 27 Cal.App.5th at p. 1051.)

"The court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are just and reasonable

18

under the relative circumstances of the respective parties." (§ 2032, subd. (a).) "In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (*Id*., subd. (b).) Among the relevant other factors is "trial tactics." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975 (*Falcone & Fyke*); see *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 112 [fees may not be "reasonable" where the "case has been overlitigated"].)

" '[A]lthough the trial court has considerable discretion in fashioning a need-based fee award [citation], the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion.' " (*Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 975.) "[T]he denial of a request for pendente lite attorney's fees is appealable." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1311.)

### c. *Analysis*

Mother argues that the court effectively denied her section 2030 request, which she claims was error. She further argues that the court erred in failing to make the statutorily required findings.

In some circumstances, an order declining to rule on a section 2030 request for fees to hire *trial counsel* until *after trial* may well be functionally equivalent to an order denying the request. But that is not the case here. Mother had already been awarded

19

$7,500 in attorney's fees for the child support modification trial (on top of $67,000 in pendente lite attorney's fees over the long course of this protracted litigation). When the trial court reserved on the request for further attorney's fees on October 31, 2016, it implicitly determined that those fees were sufficient to allow mother to go forward with trial, "disagree[ing]" with mother's position to the contrary. The same implicit determination underlies the challenged order of September 7, 2017, which reaffirmed the prior ruling reserving on attorney's fees until after trial. We acknowledge that mother not only had exhausted the $7,500 in attorney's fees, but also had incurred more than $100,000 in additional attorney's fees, before trial. But the trial judges were best situated to assess whether those fees were reasonably incurred or were the result of overlitigation. (*In re Marriage of Ciprari*, *supra*, 32 Cal.App.5th at p. 112.) The record is replete with comments from the trial judges indicating their determination that the case was being overlitigated. In April 2015, Judge Weinstein noted that "there are, almost literally, countless filings [in this case]. Indeed, there are 18 volumes of court files." He further noted that, "[i]n 2012, a child support commissioner noted, in an apparent understatement, that 'the conduct of both parties was excessive.' " In September 2017, Judge McGowan told the parties "there have been more filings in this case than any other case on the court's docket, which causes me some concern." The court was not required to sanction such litigation tactics by awarding fees beyond those it determined to be reasonably necessary in advance of trial.[10]

Even assuming the challenged order is properly treated as a denial of the section 2030 request, reversal is not required. To the extent the order was a denial, the court did commit error, both in failing to exercise its discretion and in failing to make any of the express findings required by section 2030, subdivision (a)(2). But reversal is

---

[10] We acknowledge mother is not solely responsible for the "frenetic" pace of this litigation; father has contributed as well. However, the trial court found that it was mother who primarily "incit[ed] further conflict."

required only if mother has shown a reasonable probability that the court would have awarded her some amount of fees had it considered the statutory factors, exercised its discretion, and made the requisite findings. She has not made that showing, for all the reasons set forth above. To reiterate, mother had already been awarded fees for the trial. The trial court implicitly found that those fees were sufficient to allow her to go forward with the trial and that, to the extent that mother had incurred additional fees, they were not reasonably necessary, but the result of overlitigation. The record supports those findings. Accordingly, we cannot say that mother has carried her burden to show prejudicial error.

### 6. *Limit on Trial Time*

At a February 9, 2017 hearing, father's counsel gave a one-day time estimate for trial. Mother's counsel estimated the trial would take 10 days, five per side. In July 2017, counsel for mother again estimated the trial would require 10 days—four days for the parties' forensic accountants, three days for the parties' testimony, and three days for other witnesses. The court allocated two days for trial. Mother maintains that was error. She argues that "[t]he Court's arbitrary deadline for conclusion of the trial deprived [her] of a fair trial that comported with due process and as a result, the Court did not have the information needed to make a fair determination regarding child support."

Trial courts have "inherent power to control litigation before them," including by setting trial time limits. (*Rutherford v. Owens–Illinois, Inc.* (1997) 16 Cal.4th 953, 967; see also *Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 683 [trial courts "retain great power to prevent civil trials from taking more time than necessary"].) "We review orders issued pursuant to the court's inherent powers for abuse of discretion." (*San Francisco Unified School Dist. ex. rel. Contreras v. First Student, Inc.* (2013) 213 Cal.App.4th 1212, 1227.)

Here, the trial court requested input from counsel before determining the length of trial. Mother's trial estimate was premised on her retaining a forensic accountant, calling

21

other witnesses, and—presumably—introducing evidence of father's income and finances in 2011, 2012, 2013, and 2014. Ultimately, mother did not call a forensic accountant to testify at trial. Nor did she call any witnesses other than herself. And, as discussed above, the court excluded all evidence of father's income and finances before January 2015. In view of these developments, the court did not err in failing to allocate the requested 10 days for trial.

The trial court also gave the parties ample notice of the time limits to be imposed. Specifically, the court set the matter for a two-day trial in February 2017, seven months in advance of trial.

Even assuming that the trial court abused its discretion, mother has failed to show prejudice by indicating what additional evidence she would have presented if she had been given the time to do so. (See *Turman v. Turning Point of Central California, Inc.*, *supra*, 191 Cal.App.4th at p. 58 [" 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.' "].)

### B.      Challenges to the Order Modifying Child Support

Mother raises numerous challenges to the order modifying child support issued in August 2018. She maintains the trial court failed to comply with section 4056, subdivision (a); failed to address the factors set forth in sections 4053 and 4064; erroneously based child support solely on father's salary, as opposed to his full income; erred in excluding the proceeds from the sale of Open Ed from father's income; erroneously included known income in the *Ostler-Smith* calculation; and erred by ordering that a portion of the child support be paid to court-appointed professionals. Father counters that mother waived her right to challenge the statement of decision by failing to request a statement of decision, file a proposed statement of decision and DissoMaster calculations as ordered by the trial court, or properly object to the statement of decision below. We begin by addressing father's waiver argument before turning to the merits of any unwaived claims of error.

### 1. Waiver

#### a. The Doctrine of Implied Findings

Father's waiver argument is premised in large part on the doctrine of implied findings.

#### i. Legal Principles

"The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) " 'In order to avoid the application of this doctrine of implied findings, an appellant must take two steps. First, the appellant must request a statement of decision pursuant to [Code of Civil Procedure] section 632; second, if the trial court issues a statement of decision, "a party claiming omissions or ambiguities in the factual findings must bring the omissions or ambiguities to the trial court's attention" pursuant to [Code of Civil Procedure] section 634.' [Citations.]" (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 311-312 (*Orange County Water Dist.*).) Code of Civil Procedure section 634 requires an omission or ambiguity to be "brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663" to avoid application of the doctrine of implied findings. (Code Civ. Proc., § 634.)

"These requirements apply to omissions or ambiguities in a court's *factual* findings only. Since the doctrine of implied findings does not apply to the court's legal conclusions (which are reviewed de novo on appeal), this procedure does not apply to potential errors of law. [Citations.]" (*Orange County Water Dist.*, *supra*, 12 Cal.App.5th at p. 312.)

## ii.    *Analysis*

Father argues that despite his request for a statement of decision, mother waived the right to a statement because she failed to make a similar request, requiring application of the doctrine of implied findings. "Accepting [father's] interpretation would . . . turn the process into a game. Family Code section 3654 mandates issuance of a statement of decision [with an order modifying support] on 'the request of *either* party.' (Italics added.) It does not require both parties to ask." (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010.) And the court did in fact issue a statement of decision. Accordingly, mother's failure to request a statement of decision—when one already had been requested by father—does not require us to apply the doctrine of implied findings.

Father also contends that the doctrine of implied findings applies because mother did not properly object to the statement of decision below. Mother's appeal largely raises claims of legal error, to which the doctrine of implied findings does not apply. Only her contention that the statement of decision fails to address the factors set forth in sections 4053 and 4064 is based on alleged omissions in the court's *factual* findings. The time to raise that objection was in objections to the proposed statement of decision. Mother's objections to the proposed statement of decision cited neither provision. Accordingly we imply the requisite findings and reject that claim of error.

### b.    *Invited Error*

Father also contends that mother's failure to file a proposed statement of decision and DissoMaster calculations, as ordered by the trial court, bars her from challenging the final statement of decision on appeal. For that argument, he relies on the invited error doctrine.

As a threshold matter, we note that the facts surrounding the submission—or lack thereof—of a proposed statement of decision and DissoMaster calculations by mother are not clear because the record is incomplete and the parties are less than forthcoming about what transpired below. Father says mother did not "file" the required documents. He

24

fails to inform us that, according to the register of actions, he filed objections to "R[espondent's] proposed stmt of decision re: mod of C/S," which strongly suggests that mother prepared at least a proposed statement of decision, that father had access to it, and that he took the opportunity to respond to it. For her part, mother insists she "provided" a proposed statement of decision; to whom she does not say. Nor does she mention the DissoMaster calculations the court ordered her to prepare. The proposed statement of decision, to the extent it exists, does not appear in the record. Also missing from the record are any DissoMaster calculations and father's objections to the proposed statement of decision.

The invited error doctrine "rests on the purpose of the [estoppel] principle, which prevents a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations.] . . . [T]he doctrine has not been extended to situations wherein a party may be deemed to have induced the commission of error, but did not in fact mislead the trial court in any way . . . ." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) On this record, we cannot say mother misled the trial court in connection with the statement of decision. Therefore, we decline to apply the invited error doctrine.

### 2. Child Support Orders – Legal Principles and Standard of Review

Before turning to the merits of mother's challenges to the child support modification order, we set forth the applicable legal principles and the standard governing our review.

" 'California has a strong public policy in favor of adequate child support.' [Citation.] The policy is expressed in the statutes embodying the statewide uniform child support guideline, sections 4050 through 4076. The guideline 'seeks to place the interests of children as the state's top priority.' (§ 4053, subd. (e).) Section 4053 provides that '[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life,' that '[e]ach parent should pay for the support of the children according to his or her ability,' and that

25

'[c]hildren should share in the standard of living of both parents.' (*Id.*, subds. (a), (d) & (f).) The Legislature deems it 'appropriate[]' that child support be used to 'improve the standard of living of the custodial household' because this 'improve[s] the lives of the children.' (*Id.* subd. (f).)" (*In re Marriage of Usher*, *supra*, 6 Cal.App.5th at p. 356.)

"The guideline amount of child support, calculated by applying a mathematical formula to the relative incomes of the parents, is presumptively correct. (See §§ 4055, 4057, subd. (a).) That presumption may be rebutted by 'admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053 . . . .' (§ 4057, subd. (b).)" (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1359-1360.)

"[A]n order for child support in an amount 'that differs from the statewide uniform guideline formula amount' triggers the court's sua sponte obligation [under section 4056, subdivision (a)] to state, in writing or on the record, (1) the amount of support that would have been ordered under the guideline formula; (2) the reasons the ordered amount of support differs from the guideline formula amount; and (3) the reasons the ordered amount of support is consistent with the best interests of the children." (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1014, citing § 4056, subd. (a).) "The statutory findings are mandatory. The failure to make them precludes effective appellate review and may constitute reversible error if the missing information is not otherwise discernible from the record." (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183.)

"Child support awards and a trial court's determination of a request for modification of child support are reviewed for abuse of discretion. [Citations.]" (*In re Marriage of Usher*, *supra*, 6 Cal.App.5th at p. 357.) Because the determination of child support is a highly regulated area of the law, the trial court possesses only the discretion provided by statute or rule. (*Ibid.*)

26

### 3. *Failure to Comply with Section 4056 Requires Reversal*

Here, the trial court found that this case "necessitates a deviation from guideline child support" and ordered father to pay mother $905 in monthly child support plus an annual *Ostler-Smith* payment for any additional income over $200,000. The court did not state "[t]he amount of support that would have been ordered under the guideline formula," "[t]he reasons the amount of support ordered differs from the guideline formula amount," or "[t]he reasons the amount of support ordered is consistent with the best interests of the children." (§ 4056, subd. (a).) Therefore, as mother points out, the trial court failed to comply with section 4056.

Father contends the trial court implicitly adopted his expert's calculations of guideline child support. Nothing in the record supports that contention. To the contrary, the trial court rejected one of the assumptions underlying father's expert's calculations— the inclusion of an imputed rate of return on the after-tax proceeds from the sale of Open Ed. Accordingly, we cannot reasonably infer from the record that the court adopted that expert's calculations.

As discussed above, "section 4056, subdivision (a) requires the court to render the specified information *sua sponte* when deviating from the guideline formula." (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450, italics added.) Failure to do so is reversible error unless the requisite information is "otherwise discernible from the record." (*In re Marriage of Hubner*, *supra*, 94 Cal.App.4th at p. 183.) Here, it is not. There is nothing in the record, such as a DissoMaster printout, disclosing the guideline support. We do not even know whether the deviation was upwards or downwards, let alone the court's reasons for the deviation. The noncompliance with section 4056 requires reversal. (See *Wilson v. Shea* (2001) 87 Cal.App.4th 887, 892; *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 318, fn. 5.)

27

### 4. *Exclusion of Proceeds From the Sale of Open Ed from Income*

Mother contends that the trial court erred by excluding from father's income the proceeds from the sale of Open Ed. The trial evidence showed that father received $2,684,538 from the sale of Open Ed. He invested $2,426,708 of the proceeds into two new companies and used the remaining funds ($257,830) to pay attorney's fees.

*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361 is instructive. There, the support obligor had obtained cash and stock in exchange for the sale of a business. The Court of Appeal held that such proceeds are capital assets. (*Id.* at p. 1376.) To the extent those assets are reinvested, "the resulting gain [is] not income, but merely the replacement of one capital investment with another." (*Id.* at pp. 1375-1376.) To the extent they are liquidated and spent, the trial court has the "discretion" to consider the funds expended to be income for support purposes. (*Id.* at p. 1376.) Under *Pearlstein*, the court was not *obligated* to consider any of the proceeds from the sale of Open Ed— including the $257,830 father spent on attorney's fees—to be income. Mother does not distinguish *Pearlstein*, which we find persuasive. Accordingly, we find no error.

### 5. *Claimed Errors in the Order for an Annual* **Ostler-Smith** *Payment*

Mother asserts two claims of error related to the trial court's order for an annual *Ostler-Smith* payment. First, she maintains it was error for the court to base its permanent child support award solely on father's salary, and to order a yearly *Ostler-Smith* child support payment to account for all of his other income, including dividends, rental income, interest, and capital gains. Second, she argues the court erred in failing to indicate the percentage to be used for the *Ostler-Smith* calculation.

Section 4055 sets forth the formula for determining guideline child support. Among the formula's inputs is each party's net monthly disposable income. Net disposable income is computed based on annual gross income (§ 4059), which is statutorily defined as "income from whatever source derived," with certain specified

28

exceptions not applicable here. (§ 4058.) Bonuses, rents, dividends, and interest are specifically included in the statutory definition of "annual gross income." (*Ibid*.)

"The assumption underlying these calculations is that past income is a good measure of the future income from which the parent must pay support." (*County of Placer v. Andrade* (1997) 55 Cal.App.4th 1393, 1396 (*Andrade*).) However, "certain difficulties inhere in calculating support based on income [streams] . . . [that] may be sporadic. That impediment does not justify excluding such income from the calculation, however." (*In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at p. 287.) Past income streams can be excluded from the calculation "only if [the court] determines that [the party] is unlikely to receive them in the future." (*Andrade*, *supra*, at p. 1397.) If an income stream is likely to recur but is sporadic or variable, trial courts are permitted to adjust the award to reflect likely future income. (See § 4060, § 4064, *In re Marriage of Cheriton*, *supra*, at p. 287.)

Where the recurrence of a particular income stream is uncertain—such as future bonuses—a family law court may award a percentage of any such future income as child support in an *Ostler-Smith* payment. (*In re Marriage of Usher*, *supra*, 6 Cal.App.5th at p. 352, fn. 3.) Mother has not identified, and our own research has not disclosed, case law limiting the use of *Ostler-Smith* payments to particular types of uncertain income (e.g., bonuses). Rather, her objection appears to be that the court included not only uncertain income in the *Ostler-Smith* payment but known income as well. As support for that argument, she notes that there was evidence as to the amount of father's 2017 bonus and the rental income father collected in 2015. But those isolated facts do not establish that the amount (or existence) of *future* bonuses and rental income was sufficiently certain and predictable that including those income streams in the *Ostler-Smith* payment was error.

Mother's second claim of error is well-taken. The trial court failed to identify the percentage to be used in calculating the *Ostler-Smith* payment. On remand, the court

must specify a percentage or reference and attach a DissoMaster bonus schedule. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) § 6:187.1 ["There also is a 'Bonus Schedule' in [DissoMaster] that can assure an accurate support calculation when a party has irregular or fluctuating income (e.g., bonuses, overtime, stock options, etc.)."].)

### 6. *Use of Child Support to Pay Third Party Court-Appointed Professionals*

The trial court ordered that a portion of the child support "be paid to minor's counsel's trust account to pay all outstanding balances due to professionals ordered by the court with outstanding unpaid invoices." While the statement of decision is somewhat vague, the parties agree that the court was referring to fees owed by mother to the co-parent counselor, the parent coordinator, and minor's counsel. We accept their interpretation. Mother urges that directing payment of child support to court-appointed professionals was error.

### a. *Factual Background*

The trial court appointed minor's counsel in October 2017 and ordered the parties to pay $3,750 each in attorney's fees payable to minor's counsel. In November 2017 the court appointed a parent coordinator and ordered the parties to continue previously-ordered co-parent counseling. The court further ordered the parties to each pay half of the fees for the parent coordinator and the co-parent counselor.

Mother failed to make the required payments to the court-appointed professionals. In May 2018, she informed the court that she had been laid off the preceding January, had filed for Chapter 13 bankruptcy in May, and lacked the funds to pay the court-appointed professionals.

In October 2018, the court denied mother's requests to reallocate the professional fees. In doing so, the court found that the "costs related to therapy and counseling" "are matters of child support and are child support related," citing sections 3192 and 4062,

30

subdivision (a). The court further found that payments to minor's counsel and the parenting coordinator "are similar to child support because their services directly benefit the welfare of the child." Neither the order allocating the costs of the court-appointed professionals equally between the parties, nor the denial of mother's request to reallocate those fees is before us on appeal.

### b. Legal Principles

### i. Add-On Child Support

Section 3190, subdivision (a) authorizes the family law court to require any party involved in a custody or visitation dispute, including the minor child, to participate in outpatient counseling with a licensed mental health professional. "The costs *associated with a minor child participating in counseling* shall be apportioned in accordance with Section 4062." (§ 3192, italics added.)

Section 4062 governs additional child support, "commonly known as 'add-ons.'" (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 723.) "Section 4062 specifies two types of additional child support: mandatory . . . additional child support for employment-related child care costs and reasonable uninsured health care costs [for the children] (subd. (a)) and discretionary . . . additional child support for the educational or special needs of a child or for travel expenses for visitation." (*Boutte v. Nears* (1996) 50 Cal.App.4th 162, 166 (*Boutte*).) "Section 4062's provisions for additional child support are exclusive. The court has no discretion to fashion its own 'add-ons' in the absence of statutory authority." (*Ibid.* [no add-on child support to pay attorney's fees]; *In re Marriage of de Guigne*, *supra*, 97 Cal.App.4th at p. 1367 [no add-on child support to pay rental deposit/furniture payment].)

"[If] the income of the parents is not disparate the court has discretion to apportion mandatory add-ons equally or in proportion to each parent's net disposable income." (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1039, fn. 5.) Either parent may file a noticed motion to enforce an order for payment of add-on child support to cover

31

reasonable uninsured health care costs. (§ 4063, subd. (c).) Such an order "may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (§ 290.) "In addition to the court's powers under Section 290, the court may award filing costs and reasonable attorney's fees if it finds that either party acted without reasonable cause regarding the party's obligations . . . ." (§ 4063, subd. (c).)

### ii. *Orders Controlling Use of Child Support Funds*

"A child support order need not, and generally should not, earmark specific amounts for certain purposes." (*In re Marriage of Cryer*, *supra*, 198 Cal.App.4th at p. 1051.) It is also generally inappropriate to limit the payee parent's access to child support funds by requiring them to be paid into a trust. (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128.) "[E]ven assuming a trust can be used, it must be limited to cases where there is a strong showing of necessity, buttressed by specific, detailed factual findings compelling the need to limit access to support funds." (*Ibid.*)

### c. *Analysis*

Mother argues the trial court had no authority to redirect child support payments from her to court-appointed professionals. We agree that the court's order cannot stand.

Father's theory appears to be that mother's portion of the court-appointed professionals' fees are add-on child support under section 4062 that can be offset against his own child support obligations. We need not determine whether such an offset would be appropriate because the fees owed to the co-parent counselor, the parent coordinator, and minor's counsel do not qualify as add-on child support. Those fees are not the child's "reasonable uninsured health care costs" (§ 4062, subd. (a)(2)), nor do they fall within any of the other categories of statutorily-authorized add-on child support. The court had no discretion to create its own add-ons in the absence of statutory authority. (*Boutte*, *supra*, 50 Cal.App.4th at p. 166.)

Alternatively, the order can be viewed as earmarking the child support funds for payment to the court-appointed professionals. Courts have questioned the propriety of limiting the payee parent's access to child support funds by requiring those funds to be paid into a trust or reserved for specific uses. (*In re Marriage of Chandler*, *supra*, 60 Cal.App.4th at p. 128; *In re Marriage of Cryer*, *supra*, 198 Cal.App.4th at p. 1051.) If such measures are ever appropriate, it is only in cases "where there is a strong showing of necessity, buttressed by specific, detailed factual findings compelling the need to limit access to support funds." (*In re Marriage of Chandler*, *supra*, at p. 128.) Here, the order earmarking child support and directing it to be paid into minor's counsel's trust account is unaccompanied by any factual findings. As such, it must be reversed.

### C. Challenges to the August 2019 Order

Mother challenges the August 2019 order regarding arrearages and *Ostler-Smith* payments in case No. H047513. The August 2019 order enforces the August 2018 statement of decision modifying child support, which we are reversing. Accordingly, it too must be reversed.

### D. Pending Motions

#### 1. Mother's Motion to Seal Portions of the Appellate Records

Mother has moved to seal portions of her own appendices on appeal because they disclose father's bank account numbers and the social security numbers of father and his family members. Out of an abundance of caution and to protect the privacy interests of father and his family members, we ordered the pages mother identified to be conditionally lodged under seal in October 2021.

#### a. Legal Principles

Rule 8.46 of the California Rules of Court governs sealed records and records proposed to be sealed on appeal. It provides that records that were sealed by the trial court must remain sealed on appeal unless the reviewing court orders otherwise and that records filed or lodged publicly in the trial court and not ordered sealed by that court

must not be filed under seal in the reviewing court. (Cal. Rules of Court, rule 8.46(b) and (c).)[11] It further provides that "[a] record not filed in the trial court may be filed under seal in the reviewing court only by order of the reviewing court," and sets forth a specific procedure for obtaining such an order. (Rule 8.46(d).)

Rule 1.201 provides that, "[t]o protect personal privacy and other legitimate interests, parties and their attorneys must not include, or must redact where inclusion is necessary," "[s]ocial security numbers" and "[f]inancial account numbers" "from all pleadings and other papers filed in the court's public file, whether filed in paper or electronic form, unless otherwise provided by law or ordered by the court."

### b.    Analysis

There is no indication that the documents at issue were filed under seal in the trial court. To the contrary, it appears all the records mother requests to seal were filed or lodged publicly in the trial court and not ordered sealed by that court, such that they were properly filed not under seal in this court. (Rule 8.46(c).) Because all of the records were filed in the trial court, rule 8.46(d) appears to have no application. Even if it did, mother failed to follow the requisite procedure for obtaining an order to file documents under seal from this court. For these reasons, the motion to seal is denied and the clerk of this court is directed to unseal those portions of the record that previously were ordered to be conditionally lodged under seal.

The failure of mother and her counsel to redact social security numbers and financial account numbers violates rule 1.201(a). We have requested the Clerk of the Court to redact this information from the appellate record.

### 2.    Father's Motion for Sanctions

Father filed a motion in this court seeking $133,660.51 in sanctions against mother and her attorney for alleged violations of the Rules of Court and of a protective order

---

[11] All further rule references are to the California Rules of Court.

entered in a different case. We set forth the governing Rules of Court and then address each of his contentions in turn.

Rule 8.276(a) authorizes this court, "[o]n motion of a party or its own motion, . . . [to] impose sanctions, including the award or denial of costs under rule 8.278, on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay; [¶] (2) Including in the record any matter not reasonably material to the appeal's determination; [¶] (3) Filing a frivolous motion; or [¶] (4) Committing any other unreasonable violation of these rules."

In each appeal, the record consists of appendices filed by the parties. Father contends that "none of the documents in [mother's] appendi[c]es, aside from the court transcripts, were marked or entered into evidence, and thus are not part of the record on appeal." This argument is meritless. The appellate record is not limited to evidence. It "generally consists of copies of documents filed or lodged in the superior court and a transcript or other description of pertinent oral proceedings." (Eisenberg, et al, *Cal. Prac. Guide Civ. App. & Writs* Ch. 4-A, 4:1.) Mother's appendices consist of documents filed below—motions, requests for orders, supporting declarations, court orders, and the like. These documents are properly part of the appellate record. Indeed, we would be unable to review mother's claims of error without them.

Next, father contends mother violated a protective order by including certain documents in her appendices. We set forth the relevant background before addressing this contention.

Mother sued her former attorney for malpractice in Contra Costa County Superior Court. In that action, she subpoenaed father's financial information from various financial institutions, including some she had subpoenaed in this action but which subpoenas had been quashed. Father did not learn of the subpoenas until after mother received the subpoenaed records. On August 18, 2017, the Contra Costa County Superior Court ordered that all documents responsive to the subpoenas not be used in any action

35

and be sealed until further order of the court.  On August 23, 2017, the trial court in this action ordered that "no records from subpoenas previously quashed in this case shall be used in these proceedings."  In October 2017, mother and father entered into a stipulated protective order in the Contra Costa County litigation.  That stipulated protective order provides:  "Both parties and counsel agree that CONFIDENTIAL INFORMATION under this order shall pertain to all documents in the name of Adam S. Blum or received pursuant to a subpoena for records in the name of Adam S. Blum including, but not limited to, documents from Charles Schwab, Pershing LLC, Deutsche Bank, Morgan Stanley, and Key bank as well as any information contained within those documents.  [¶] . . . No one to whom CONFIDENTIAL INFORMATION is disclosed shall use it for any purpose other than in conjunction with this Contra Costa County Case No. C-15-01104 and only in accordance with the terms of this Order.  CONFIDENTIAL INFORMATION shall not be used in the Santa Clara County Family Law Action, Case No. 105FL129664."

Father now argues that this protective order precludes mother from using any of his financial documents in the underlying family law case and in these appeals.  In his view, her inclusion in the appellate record of documents he filed or produced in discovery in this very case—his income and expense declarations, paystubs, and tax returns— violated the protective order.  In other words, quite bafflingly in our view, he faults mother for providing this court with the documents on which the trial court relied in making the appealed-from child support modification order.  For this astonishing position, father relies on the italicized language in the following excerpt from the protective order:  "Both parties and counsel agree that CONFIDENTIAL INFORMATION under this order shall pertain to *all documents in the name of Adam S. Blum* or received pursuant to a subpoena for records in the name of Adam S. Blum including, but not limited to, documents from Charles Schwab, Pershing LLC, Deutsche

36

Bank, Morgan Stanley, and Key bank as well as any information contained within those documents."

Based on the facts set forth above, it appears the protective order was entered into to address the use of subpoenaed bank documents and to prevent mother from making an end run around the orders quashing similar subpoenas in this case. Given that context, it appears the provision is inartfully drafted, rather than designed to preclude mother from ever using any of father's financial documents whenever and however obtained. Indeed, it is inconceivable that mother would have agreed to such an order while embroiled in litigation regarding child support, which is decided based on the parties' finances.

We need not definitively construe the protective order. Needless to say, we are extremely skeptical of father's position that mother is henceforth precluded from using any of his financial documents in this ongoing litigation regarding child support. We decline to sanction mother for her inclusion of these documents—which were in the court files and bear directly on the challenged orders—in the appellate record.

Next, father points out that mother's briefs and appendices violate the Rules of Court in a number of ways. First, in case Nos. H045460 and H046286, mother's counsel failed to identify the appendix volume where record citations can be found, citing only to page numbers, in violation of rule 8.204(a)(1)(C). Second, as discussed above, mother and her counsel failed to redact social security numbers and financial account numbers from numerous documents in the appellate record, in violation of rule 1.201(a). Third, mother's opening brief in case No. H045460 fails to explain why the appealed-from order is appealable, in violation of rule 8.204(a)(2)(B).[12] While we do not condone these violations of the California Rules of Court, we decline to impose sanctions. We admonish mother and her counsel that we will impose sanctions in the future for similar

_____

[12] Father also contends that each of mother's opening briefs violates rule 8.204(a)(2)(C) by failing to "[p]rovide a summary of the significant facts." While certain facts are omitted, we disagree that the briefs are as inadequate as father suggests.

conduct in any further proceedings before this court. We trust that this warning will be sufficient to discourage such conduct in the future.

Finally, father suggests the appeals currently before us are so frivolous as to merit sanctions. Plainly, we disagree as we are reversing two of the challenged orders.

### E.    Conclusion

The following comments from our colleagues in the Fifth District apply with equal force here: "[T]his litigation is out of control. It is apparent that the litigants and the attorneys cannot control it. The attempts by the family court to control it have failed. The emotions of the parties and their attorneys are heightened to the point where the welfare of the [child] is at risk." (*In re Marriage of Tharp*, *supra*, 188 Cal.App.4th at p. 1328.) The child is approaching his eighteenth birthday, and yet there is no end in sight. On remand, the family court judge ought to "use the tools available in the rules and the Family Code to bring this case under control and to move this case to completion." (*Ibid*.)

## III.    DISPOSITION

The August 14, 2018 order modifying child support and the August 29, 2019 enforcement order are reversed. The matter is remanded to the trial court with directions to (1) calculate guideline child support using the statutory formula; (2) to the extent that the base child support ordered deviates from that guideline, make the findings required by Family Code section 4056; (3) specify the percentage to be used in calculating the annual *Ostler-Smith* payment; and (4) calculate the annual *Ostler-Smith* payment for each year. The parties shall bear their own costs on appeal.

_____
ELIA, ACTING P.J.

WE CONCUR:

_____
LIE, J.

_____
WILSON, J.

*Blum v. Herbstman*
H045460, H046286, H047513